UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMAN WILHOITE and JUDITH WILHOITE, derivatively on behalf of TuSimple Holdings, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> XIAODI HOU, MO CHEN, CHENG LU, GUOWEI "CHARLES" CHAO, and HYDRON, INC., <br><br> Defendants. <br><br> -and- <br><br> TUSIMPLE HOLDINGS, INC., <br><br> Nominal Defendant. | Case No.: 3:23-cv-02333-BEN-MSB <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR EXPEDITED DISCOVERY PURUSANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(d)(1)** <br><br> **[ECF No. 8]** |

On January 5, 2024, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO") and Expedited Discovery. ECF No. 8 ("Mot."). Nominal Defendant TuSimple Holdings, Inc. ("TuSimple"), filed an opposition to the Motion. ECF No. 28 ("Oppo.").

1

Plaintiffs replied. ECF No. 33 ("Reply"). A hearing on the motion was held on January 22, 2024. ECF No. 35.

## I.   FACTUAL BACKGROUND

Plaintiffs Norman and Judith Wilhoite are current shareholders of TuSimple and citizens of Hawaii. ECF No. 1, Verified Shareholder Complaint ("Compl.") ¶ 18. Plaintiffs filed their complaint on December 22, 2023. *See generally* Compl. Plaintiffs filed the motion for TRO on January 5, 2024. ECF No. 8.

According to the complaint, TuSimple was founded in 2015 by Defendants Mo Chen ("Chen") and Xiaodi Hou ("Hou"). Compl. ¶ 24. TuSimple's goal was to develop self-driving technology for long-haul freight trucks, which would require specified routes mapped in high definition and connected by a network of terminals, which it called an 'autonomous freight network.' Compl. ¶¶ 34, 38; Oppo. at 5. TuSimple is a Delaware corporation headquartered in San Diego, California; until recently, it operated primarily in the United States and China. Compl. ¶ 24. However, in June of 2023, TuSimple announced it was evaluating "strategic alternatives for its U.S. business . . . ." Mot., Ex. 24. On December 4, 2023, TuSimple announced it was winding down the company's U.S. operations and shifting its focus to the Asia-Pacific region. Mot., Ex. 25.

In March of 2021, Defendant Mo Chen launched a company called Hydron, which is a named Defendant in this action. Compl. ¶ 23. Plaintiffs allege Hydron competes with TuSimple and conducts the majority of its business in China.[1] *Id*. Hydron was incorporated in Delaware and, until recently, had its base of operations in Southern California. *Id*. However, on November 13, 2023, Hydron filed a record with the

---

[1] TuSimple's opposition argues Hydron is not a direct competitor but a manufacturer of trucks into which TuSimple technology could be placed, but the trucks are ultimately "software agnostic." Oppo. at 6.

1  California Secretary of State surrendering its right to transact business in the state and
2  revoking its designation of agent for service of process.  Mot., Ex. 26.
3        On October 31, 2022, TuSimple reported in an SEC filing that during 2021,
4  TuSimple employees spent paid hours working on matters for Hydron.  Mot., Ex. 14.
5  Additionally, this filing indicated that during 2022, TuSimple shared "confidential
6  information" with Hydron while evaluating Hydron as a potential original equipment
7  manufacturer ("OEM") partner.  *Id*.
8        Several events have taken place since the TRO motion was filed.  First, on January
9  12, 2024, TuSimple announced it would conduct auctions of its trucks, research and
10 development equipment, and office supplies between January 23rd and February 8th.  ECF
11 No. 33, Reply Declaration of Albert Chang ¶ 2, Ex. 28.  Second, on January 17th,
12 TuSimple announced its voluntary decision to deregister and delist its Class A Common
13 Stock; when this process is complete, TuSimple will no longer be a public company.  *See*
14 ECF No. 29, Notice of Forthcoming Change in Regulatory Status at 2.

15 **II.    LEGAL STANDARDS**

16       *1. Temporary Restraining Order.*  The factors for issuing a temporary restraining
17 order are 'substantially identical' to the factors evaluating a request for preliminary
18 injunctive relief.  *Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839
19 n.7 (9th Cir. 2001).  The Court evaluates whether: (1) the movant is likely to succeed on
20 the merits; (2) the movant is likely to suffer irreparable harm in the absence of
21 preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an
22 injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7
23 (2008).  A temporary restraining order's underlying purpose is to preserve the status quo
24 and prevent irreparable harm until a preliminary injunction can be held.  *Granny Goose*
25 *Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).
26       *2. Plaintiffs' Underlying Claims.*  Plaintiffs bring two claims: one arising under the
27 federal Defend Trade Secrets Act ("DTSA") and one under California's Uniform Trade
28 Secrets Act ("CUTSA").  *See generally* Compl.  Claims arising under the DTSA and

CUTSA have "substantially similar elements." *Sun Distrib. Co., LLC v. Corbett*, 2018 WL 4951966 at *2 (S.D. Cal. Oct. 12, 2018).  To state a claim for misappropriation of trade secrets, a plaintiff must allege: (1) existence and ownership of a trade secret, and (2) misappropriation thereof.  *Cutera, Inc. v. Lutronic Aesthetics, Inc*., 444 F. Supp. 3d 1198, 1205 (E.D. Cal. 2020).  A "trade secret" has three elements: (1) it is a specific type of information (*i.e.*, financial, scientific, technical, etc.); (2) the owner has taken reasonable measures to keep secret; and (3) the information derives independent economic value from its secrecy.  *Cutera*, 444 F. Supp. 3d at 1205; *see also* 18 USC § 1839(3); Cal. Civ. Code § 3426.1(d).  Misappropriation is defined as improper: (1) acquisition; (2) disclosure; or (3) use of a trade secret.  *Kimera Labs Inc. v Jayashankar*, 2022 WL 11965058 at *6 (S.D. Cal. Oct. 20, 2022).  The DTSA permits a Court to enjoin "actual or threatened misappropriation." *See* 18 USC § 1836(b)(3)(A)(i).

### III.   DISCUSSION

A. Temporary Restraining Order

Parties presented thoughtful arguments at the hearing held January 22, 2024.  *See* ECF No. 35.   Defendant TuSimple argues two main points: (1) Plaintiffs have not demonstrated sufficient facts to support the idea that misappropriation of TuSimple's trade secrets is imminent, or even that past misappropriation has occurred (Oppo. at 14-18); and (2) Plaintiffs have brought suit in this district in contravention of a valid and enforceable forum selection clause (Oppo. at 9-10).

On the first point, Plaintiffs argue there is a strong inference that Hydron utilized TuSimple's trade secrets because it was able to announce it was "autonomous ready" only twenty months[2] after its founding in March 2021.  In contrast, TuSimple spent over

---

[2] Plaintiffs' motion describes this period as seven months.  Mot at 17.  However this appears to be a mathematical error.  Plaintiffs' exhibits confirm Hydron was incorporated in 2021 (Mot., Ex. 12) and announced it was "autonomous ready" in November 2022 (Mot., Ex. 27).

seven years developing its autonomous driving technology.  Compl. ¶ 24.  Strengthening this inference is the fact that TuSimple employees performed work for Hydron in 2021, "during which they presumably utilized TuSimple trade secrets."  Reply at 2.  The connections between TuSimple and Hydron were discussed in depth at the hearing.  ECF No. 35.

Given the timeline of events and circumstantial evidence, the arguments of the parties, and the allegations in the complaint, the Court finds Plaintiffs have raised serious questions regarding the merits of their claim under the DTSA warranting issuance of a TRO.

*1. TRO Factors*.  Through circumstantial evidence and reasonable inference, Plaintiffs have demonstrated misappropriation of TuSimple's trade secrets by Defendant Hydron and others is likely to occur absent a TRO, if it has not occurred already.  Although the Defendants argue Plaintiffs lack concrete, direct proof, this is not required for a TRO.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("serious question" on the merits sufficient for issuance of a TRO).  Additionally, Plaintiffs have also reasonably argued TuSimple's planned liquidation of its U.S. assets and expatriation of the proceeds abroad would result in irreparable harm to Plaintiffs as it would leave these Plaintiffs and others no legal recourse for their claims.  Plaintiffs have demonstrated they lack any other adequate legal remedy to preserve the status quo, tipping the balance of equities in their favor.  At the hearing, counsel for TuSimple indicated no hardship that would befall TuSimple as a result of the proposed TRO's restrictions, aside from some reputational harm.  Finally, "discouraging practices aimed at surreptitiously acquiring trade secrets" is well within the public interest.  *Avery Dennison Corp. v. Kitsonas*, 118 F.Supp.2d 848, 855 (S.D. Ohio 2000).

*2. Defendant's Forum Non Conveniens Argument.* While Defendants make strong arguments that the forum selection clause is valid and enforceable (*see* Oppo. at 9-10), Plaintiffs correctly identify this does directly relate to the *merits* of their DTSA claim (Reply at 11-14).  Courts have used their discretion to go in both directions when faced

with dueling or sequential TRO motions and motions to transfer or dismiss based on *forum non conveniens* grounds.  *Compare Flynn v. Nat'l Asset Mgmt. Agency*, 42 F. Supp. 3d 527, 531 n.6 (S.D.N.Y. 2014) (court denied preliminary injunction and dismissed on *forum non conveniens* grounds) *with Monte Carlo Aviation Corp. v. Dassault Aviation S.A.*, 2011 WL 345774 (E.D. Ark. Feb. 1, 2011) (denial of preliminary injunction and dismissal of case on *forum non conveniens* grounds after TRO previously issued).  The Court finds a TRO is warranted given the rapid nature of unfolding events, and the Court may address TuSimple's *forum non conveniens* arguments in considering the briefing already underway related to TuSimple's motion to dismiss.  *See* ECF No. 27.

### B. Expedited Discovery

Courts in the Ninth Circuit generally use a "good cause" standard to evaluate whether to permit expedited discovery, considering such factors as: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting expedited discovery; (4) the burden on defendants to comply with the request; and (4) how far in advance of typical discovery process the request is made.  *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009).

The Court finds that Plaintiffs' expedited discovery requests at this point are overbroad and overly burdensome.  *See* Oppo. at 23-24.  Plaintiffs have not adequately demonstrated, either at the hearing or in the briefing, why materials pertinent to TuSimple's internal investigation of the 2022 information sharing is necessary on an expedited basis.  However, the Court finds good cause for some expedited discovery, and grants to Plaintiffs more limited expedited discovery.

### IV.   ORDER

Having considered the parties submissions and arguments and for the reasons set forth above, the Court **GRANTS** the Motion and **ORDERS** as follows:

A) Temporary Restraining Order:

Defendants and all those acting in concert with any of them and with actual notice of the Court's Order, are enjoined for a period of forty-five (45) days from the date of this Order from:

1. Violating the National Security Agreement between TuSimple, Holdings, Inc. and the Committee on Foreign Investment in the United States ("CFIUS").

2. Selling, transferring, or disclosing TuSimple trade secrets to people or entities outside the United States, including TuSimple's China-based businesses.

3. Selling, transferring, or disclosing TuSimple trade secrets to Hydron, Inc.

4. Transferring outside of the United States any proceeds obtained from the sale, transfer, or disclosure of TuSimple's trade secrets.

5. Transferring outside of the United States any proceeds obtained from the sale, transfer, or disclosure of TuSimple's assets other than trade secrets.

### B) Expedited Discovery

Within fourteen (14) days from the date of this Order, TuSimple shall provide to Plaintiffs the following documents in their possession, custody or control:

A) Documents sufficient to show the location of TuSimple's trade secrets; and

B) Documents sufficient to identify any proprietary information and/or intellectual property belonging to TuSimple that has been disclosed or transferred to Hydron.

Any materials turned over by Defendants to Plaintiffs' counsel shall be maintained by Plaintiffs' counsel as highly confidential—Attorneys' Eyes Only.

### C) Briefing Schedule Regarding Appropriate Bond

Fed. R. Civ. Proc. 65(c) contemplates a plaintiff seeking a TRO to post a bond. Neither party raised this issue in their briefing. Accordingly, the Court **ORDERS** the parties to brief the issue of an appropriate security, or the waiver of same, in accordance with the following briefing schedule:

1. Defendant TuSimple shall file a brief regarding the appropriate amount of bond or security in relation to this TRO, and do so no later than Thursday, January 25, 2024.

2. Plaintiffs shall file their brief in response regarding the appropriate amount of bond or security in relation to this TRO, and do so no later than Monday, January 29, 2024.

3. The Court will then take the issue under submission.

**D) Preliminary Injunction Hearing**

A hearing is set for Friday, March 8, 2024 at 10:30 a.m. in Courtroom 5A before Judge Roger T. Benitez.

The following briefing schedule applies:

1. Plaintiffs shall file their Motion for Preliminary Injunction by February 9, 2024.

2. Defendants shall respond to the motion by February 23, 2024.

3. Plaintiffs shall file any reply by March 2, 2024.

**IT IS SO ORDERED.**

Dated: January 23, 2024

HON. ROGER T. BENITEZ
United States District Judge