1  BOTTINI & BOTTINI, INC.
   Francis A. Bottini, Jr. (SBN 175783)
2  Albert Y. Chang (SBN 296065)
   Aaron P. Arnzen (SBN 218272)
3  7817 Ivanhoe Avenue, Suite 102
   La Jolla, California 92037
4  Telephone:   (858) 914-2001
   Facsimile:    (858) 914-2002
5  *Attorneys for Plaintiffs*
   *Norman Wilhoite and Judith Wilhoite*
6

7

8              UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10  NORMAN WILHOITE and JUDITH        Case No. 23cv2333 BEN (MSB)
    WILHOITE, derivatively on behalf of
11  TUSIMPLE HOLDINGS, INC.,          **Declaration of Albert Y. Chang in
                                      Support of Plaintiffs' Motion for
12                      Plaintiffs,   Preliminary Injunction**

13              vs.

14  XIAODI HOU, MO CHEN, CHENG
    LU, GUOWEI "CHARLES" CHAO,
15  and HYDRON, INC.,                 Date:       March 8, 2024
                                      Time:       10:30 a.m.
16                      Defendants,   Courtroom:  5A (Schwartz)
                                      Judge:      Hon. Roger T. Benitez
17              - and -

    TUSIMPLE HOLDINGS, INC.,
18
                Nominal Defendant.
19

20

21

22

23

24

25

26

27

28

Under 28 U.S.C. § 1746, I, Albert Y. Chang, declare as follows:

1.     I am an attorney with the law firm of Bottini & Bottini, Inc., counsel for plaintiffs Norman Wilhoite and Judith Wilhoite in this action. I make this declaration in support of plaintiffs' *ex parte* motion for preliminary injunction. I have personal knowledge of the facts stated in this declaration; I could and would competently testify to these facts, if called upon to do so.

2.     On the afternoon of February 6, 2024, Nominal Defendant TuSimple Holdings, Inc. produced documents bearing Bates-numbers TUSIMPLE-WILHOITE_00000001 through TUSIMPLE-WILHOITE_00000220.

3.     Attached as **Exhibit 32**[1] is a true and correct copy of a document bearing Bates-number TUSIMPLE-WILHOITE_00000195.

4.     Attached as **Exhibit 33** is a true and correct copy of my January 25, 2024 email to Robert Kingsley Smith, counsel for Nominal Defendant TuSimple Holdings, Inc.

5.     Attached as **Exhibit 34** is a true and correct copy of a document bearing Bates-number TUSIMPLE-WILHOITE_00000024.

6.     Attached as **Exhibit 35** is a true and correct copy of a document bearing Bates-number TUSIMPLE-WILHOITE_00000049.

7.     Attached as **Exhibit 36** is a true and correct copy of a document bearing Bates-number TUSIMPLE-WILHOITE_00000173.

8.     Attached as **Exhibit 37** is a true and correct copy of a document bearing Bates-number TUSIMPLE-WILHOITE_00000187.

9.     Attached as **Exhibit 38** is a true and correct copy of a document bearing Bates-number TUSIMPLE-WILHOITE_00000013.

10.    Attached as **Exhibit 39** is a true and correct copy of the printout of the

---

[1] The exhibit numbers follow the exhibit numbers used in my January 18, 2024 reply declaration (the "Second Chang Declaration") (ECF No. 33-1) in further support of Plaintiffs' motion for temporary restraining order ("TRO") and expedited discovery. The last exhibit to the Second Chang Declaration is Exhibit 31.

1

Internet page https://hydron.com/ (last visited Feb. 9, 2024).

11.     Attached as **Exhibit 40** is a true and correct copy of a document bearing Bates-number TUSIMPLE-WILHOITE_00000203.

12.     Attached as **Exhibit 41** is a true and correct copy of a document bearing Bates-number TUSIMPLE-WILHOITE_00000212.

13.     Attached as **Exhibit 42** is a true and correct copy of a letter dated February 6, 2024 from TuSimple's counsel to Plaintiffs' counsel regarding its document production.

14.     Attached as **Exhibit 43** is a true and correct copy of an article by Kate O'Keeffe, *et al.*, *Missing Boxes, an Email From China: How a Chip Shipment Sparked a U.S. Probe*, WALL STREET JOURNAL (Jan. 30, 2024).

15.     Attached as **Exhibit 44** is a true and correct copy of a document bearing Bates-number TUSIMPLE-WILHOITE_00000031 — 045.

16.     Attached as **Exhibit 45** is a true and correct copy of a document bearing Bates-number TUSIMPLE-WILHOITE_00000046 — 075.

17.     Attached as **Exhibit 46** is a true and correct copy of the certification and notice of termination of registration under section 12(g) of the Securities Exchange Act of 1934 or suspension of duty to file reports under sections 13 and 15(d) of the Securities Exchange Act of 1934, as filed by TuSimple Holdings.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 9, 2024, in La Jolla, California.

s/ Albert Y. Chang
Albert Y. Chang

Declaration of Albert Y. Chang in Support of            Case No. 23cv2333 BEN (MSB)
Plaintiffs' Motion for Preliminary Injunction

# EXHIBIT 32

## **REDACTED**

**(CONFIDENTIAL VERSION OF DOCUMENT
LODGED UNDER SEAL PURSUANT TO
TEMPORARY RESTRAINING ORDER)**

# EXHIBIT 33

# EXHIBIT 33

| From: | Albert Chang |
|---|---|
| To: | Smith, Robert Kingsley |
| Cc: | Paine, William; Sujanani, Sonia; Muck, Kevin; Aaron Arnzen; Thomas James; James Janison; eric.riedel@blbglaw.com |
| Bcc: | Greg Varallo; Frank Bottini |
| Subject: | RE: Wilhoite v. Hou, Case No. 23-cv-2333 BEN (MSB) (S.D. Cal.)/Meet and Confer re Discovery |
| Date: | Thursday, January 25, 2024 1:08:00 PM |

Dear Rob,

I write in response to the two "modifications" you raised. First, we are amenable to defining the term "trade secret" in the TRO, but first request that you make the court-ordered production so we can better understand your concerns.

Second, we reject your proposal to insert the term "from the United States" to paragraph 3 of Section IV of the TRO. In our view, TuSimple must refrain from sharing any trade secrets with Hydron during this 45-day period, whether or not such trade secrets are located in the United States or abroad.

With respect to paragraph 2 of Section IV, we lack sufficient information to determine whether any trade secrets located outside the United States are subject to the National Security Agreement ("NSA"), whether such trade secrets are located abroad as a result of a violation of the NSA, and whether TuSimple's trade secrets located outside the United States have been or are at risk of misappropriation. As a result, we cannot agree to your proposed modification. Should TuSimple immediately produce a copy of the NSA as part of the court-ordered discovery and the rest of the court-ordered production, that would enable us to make an informed decision as to your proposal.

Regards,
Albert

**Albert Y. Chang**
achang@bottinilaw.com

Bᴏᴛᴛɪɴɪ & Bᴏᴛᴛɪɴɪ, ɪɴᴄ.

7817 Ivanhoe Avenue, Suite 102 • La Jolla, CA 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002
www.bottinilaw.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email and destroy all copies of the original message.

**From:** Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>
**Sent:** Wednesday, January 24, 2024 3:57 PM
**To:** Albert Chang <achang@bottinilaw.com>
**Cc:** Paine, William <William.Paine@wilmerhale.com>; Sujanani, Sonia <Sonia.Sujanani@wilmerhale.com>; Muck, Kevin <Kevin.Muck@wilmerhale.com>; Aaron Arnzen <aarnzen@bottinilaw.com>; Thomas James <Thomas.James@blbglaw.com>; James Janison <James.Janison@blbglaw.com>; eric.riedel@blbglaw.com

# EXHIBIT 34

## REDACTED

**(CONFIDENTIAL VERSION OF DOCUMENT LODGED UNDER SEAL PURSUANT TO TEMPORARY RESTRAINING ORDER)**

# EXHIBIT 35

## **REDACTED**

**(CONFIDENTIAL VERSION OF DOCUMENT LODGED UNDER SEAL PURSUANT TO TEMPORARY RESTRAINING ORDER)**

# EXHIBIT 36

## <u>REDACTED</u>

**(CONFIDENTIAL VERSION OF DOCUMENT
LODGED UNDER SEAL PURSUANT TO
TEMPORARY RESTRAINING ORDER)**

# EXHIBIT 37

## **<u>REDACTED</u>**

**(CONFIDENTIAL VERSION OF DOCUMENT
LODGED UNDER SEAL PURSUANT TO
TEMPORARY RESTRAINING ORDER)**

# EXHIBIT 38

## <u>REDACTED</u>

**(CONFIDENTIAL VERSION OF DOCUMENT LODGED UNDER SEAL PURSUANT TO TEMPORARY RESTRAINING ORDER)**

# EXHIBIT 39

EXHIBIT 39

**HYDRON**

# ZERO EMISSION, AUTONOMOUS READY TRUCKS FOR A BETTER WORLD

At Hydron we design, manufacture, and sell autonomous ready trucks powered by clean hydrogen fuel cells.

**Show me More**

HYDRON

## OUR MISSION    OUR VISION

Our mission is to transform long-haul freight transportation by developing the cleanest and most efficient trucks on the planet.



## A NEW KIND OF COMPANY DEVELOPING GAME CHANGING PRODUCTS IN THREE

### 01

### CLEAN PROPULSION

Our trucks are equipped with reliable powertrains powered by zero

### 02

### AUTONOMOUS READY

Each truck is equipped with a complete set of sensors, computing units

### 03

### REFUELING INFRASTRUC

By offering on-site hydrogen refueling infrastructure along high-volume

# HYDRON

## AREAS

hydrogen fuel cell technology providing the necessary power and range to support long-haul over the road operations.

actuators to support SAE Level 4 autonomous operations, allowing fleet owners to operate our trucks nearly continuously stopping only for refueling and preventative maintenance.

we're able to provide our customers with the solutions they need to keep freight moving.

**Show me More**

**HYDRON**

## BORN TO MAKE FREIGHT TRANSPORTATION SAFER, CLEANER AND MORE EFFICIENT

Play Video

## HYDRON OFFICE

**2580 E Philadelphia St**
**Unit D**
**Ontario, CA 91761**
**United States**





  

**HYDRON**

CONNEC

# TODAY

## CONTACT US

**Full Name**

**Email**                    **Compar**

**Investor Relations**

**How Can We Help?**

By clicking **"submit"** you agree to receive marketing communications from us in accordance with our **Privacy Policy**

Submit



## GENERAL INQUIRIES

[info@hydron.com](mailto:info@hydron.com)

## HYDRON OFFICE

2580 E Philadelphia St
Unit D
Ontario, CA 91761
United States

## DOWNLOAD

**Media Kit**

**Join Our Newsletter**

  

© 2022 Hydron LLC. All Rights Reserved

**FAQ**

**How to become a java developer**

# EXHIBIT 40

## REDACTED

**(CONFIDENTIAL VERSION OF DOCUMENT
LODGED UNDER SEAL PURSUANT TO
TEMPORARY RESTRAINING ORDER)**

# EXHIBIT 41

## <u>REDACTED</u>

**(CONFIDENTIAL VERSION OF DOCUMENT LODGED UNDER SEAL PURSUANT TO TEMPORARY RESTRAINING ORDER)**

# EXHIBIT 42

## **REDACTED**

**(CONFIDENTIAL VERSION OF DOCUMENT
LODGED UNDER SEAL PURSUANT TO
TEMPORARY RESTRAINING ORDER)**

# EXHIBIT 43

# EXHIBIT 43

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.

https://www.wsj.com/tech/tusimple-china-company-chip-shipment-investigation-13e362be

EXCLUSIVE | TECHNOLOGY

# Missing Boxes, an Email From China: How a Chip Shipment Sparked a U.S. Probe

Authorities stopped the shipment by autonomous-trucking firm TuSimple in its latest tangle with the American government

By *Kate O'Keeffe* Follow , *Heather Somerville* Follow , *Yang Jie* Follow and *Aruna Viswanatha* Follow

Jan. 30, 2024 7:41 pm ET



A TuSimple autonomous Delta 4 truck drives on I-10 in Tucson, Ariz., in 2021. PHOTO: CASSIDY ARAIZA FOR THE WALL STREET JOURNAL

Autonomous-trucking company TuSimple TSP **-23.77%** ▼ , facing several federal investigations, was preparing to exit from the American market for China when the CEO directed his staff to ship advanced semiconductors out of the U.S.

The 24 Nvidia chips, bound for a newly established subsidiary in Australia, never made it.

After weeks of waiting, TuSimple executives learned in early January that the Commerce Department had stopped the shipment while the agency investigates

whether the company planned ultimately to send the chips to China in violation of export controls, according to people familiar with the matter.

The probe adds a new dimension to federal authorities' suspicions about San Diego-based TuSimple's dealings in China, after the U.S. government previously ordered the company to segregate its American and Chinese businesses.

The A100 chips, which TuSimple planned to use to improve its self-driving technology for semi trucks, are among Nvidia's NVDA -1.83% ▼ most powerful processors for high-performance computing and artificial intelligence. While the chips are permitted to be sent to Australia, Biden administration restrictions prohibit their transfer to China as part of an effort to keep American technology from aiding China's military buildup.

TuSimple denied wrongdoing. A spokesman said that the transfer of the chips to an Australian subsidiary was lawful and that the company wouldn't send them to China. Since the chips were owned by the U.S. company, he said, TuSimple would save money as it looks to refocus its business on Australia, Japan and China.

"TuSimple is sending spare parts owned by its U.S. business for use by its Australia business because TuSimple is winding down its business in the United States," the spokesman said.

The Federal Bureau of Investigation, the Securities and Exchange Commission and a national security panel have previously opened separate investigations into whether TuSimple was transferring technology to China. Shareholders also filed lawsuits, with a judge in one case last week issuing a temporary order barring TuSimple from sharing trade secrets outside the U.S.

Earlier this month—two weeks after learning of the Commerce Department investigation—TuSimple said it was delisting from Nasdaq and going private, effectively removing itself from future disclosure obligations.

Around that time, TuSimple's chief executive officer, Cheng Lu, left the U.S. for China on a trip the spokesman said was aimed at overseeing the company's Asia-Pacific shift and was "completely unrelated" to the chips.



TuSimple CEO Cheng Lu at the company's warehouse in Tucson in 2022. PHOTO: REBECCA NOBLE/REUTERS

The Commerce Department said it enforces controls on the unauthorized export of semiconductors to China, but declined to confirm or comment on any investigation.

TuSimple straddled the U.S. and China on its rise to becoming a global leader in autonomous long-haul trucking. Its co-founders were born in China. Lu is a U.S. citizen born in Beijing, according to Australian corporate records.

The company raised more than a billion dollars from investors, largely from China and the U.S., tested its technology in Arizona and attracted premier business partners, such as truck manufacturer Navistar, based in Illinois. TuSimple publicly listed on Nasdaq in 2021 with an $8.5 billion valuation.

It then found its prospects in America compromised by tangles with the U.S. government, investor disillusionment with the autonomous-driving sector and doubts around TuSimple's safety practices.

By the middle of last year, the company was looking to sell its U.S. operations. In October, Lu set up a subsidiary in Australia, where the company had previously considered expanding.



The A100 chips are among Nvidia's most powerful processors for high-performance computing and artificial intelligence. A100 chips power an AI server at the 2021 Global Artificial Intelligence Technology Conference in China. PHOTO: FEATURE CHINA/BARCROFT MEDIA/GETTY IMAGES

TuSimple used Lansdowne Financial, an Australian corporate-registration service, to set up its new unit, which is fully owned by the U.S. holding company, corporate records show. Lu and TuSimple executive chairman and co-founder Mo Chen are among the directors of the unit, TuSimple Australia Pty Ltd. Its listed address in North Sydney is Lansdowne's address in a white office tower.

A month later, TuSimple was preparing to auction off its fleet of U.S. trucks, and Lu told employees to ship abroad the company's remaining inventory of Nvidia A100 chips, according to people familiar with the matter and documents and messages reviewed by The Wall Street Journal.

Lu said in meetings that he wanted the chips sent to China, according to the people familiar. On Nov. 14, Lu's assistant sent a TuSimple executive in China an email, naming Australia as the destination: "Cheng has requested that the A100's that we have in stock (Qty 24) be shipped to Australia. Can you provide me with the Shipping address, POC and a telephone number?" the email said.

TuSimple's legal team then weighed in, saying sending the chips to China wouldn't be allowed but that sending them to Australia was OK, messages reviewed by the Journal show.

Another TuSimple China employee contacted Lansdowne on Nov. 20 asking if the service would accept a delivery from the U.S. of "some small equipment," according to an email. "It'd be much appreciated if you could kindly help receive

it for us before we go to Australia and fetch it next month," the TuSimple employee wrote.



TuSimple publicly listed on Nasdaq in 2021 with an $8.5 billion valuation, but by the middle of 2023 the company was starting to wind down its U.S. operations. PHOTO: TUSIMPLE

TuSimple mailed the chips from San Diego in six boxes weighing a total of 90 pounds via FedEx on Nov. 28, according to tracking information viewed by the Journal.

The chips were scheduled to arrive in Australia by Dec. 6, it said. But the date came and went with no delivery.

TuSimple executives sweated it out for weeks before learning from the carrier on Jan. 3 that U.S. authorities had stopped the shipment, the people familiar said. FedEx's website now shows no delivery date, with one package still in San Diego and the others in Oakland, Calif.

A FedEx spokeswoman said the company has policies and procedures to screen transactions "to identify people or entities on restricted or sanctioned party lists."

A spokesman for Nvidia said in a statement that the company complies with export control laws and "will look into any reports of unlicensed shipments."

A Lansdowne spokesman said the firm was never aware of any plans to send the shipment on to China.

With the chips supposedly on their way to Australia, TuSimple announced it had laid off nearly all its remaining staff in the U.S. as it prepared to shut down its American operations and sell its remaining assets.

TuSimple had previously rebuffed prospective buyers. A consortium including an investor group and Torc Robotics, an autonomous-trucking subsidiary of Daimler AG, made an offer Chen considered too low, said people with knowledge of the matter. A spokeswoman for Torc declined to comment.

Before TuSimple went public in 2021, a multiagency U.S. government national security panel investigated the company over a large stake held by a Chinese investor who controlled two seats on the board. As a result, the Committee on Foreign Investment in the U.S., or Cfius, reached an agreement with TuSimple in early 2022 requiring that the company avoid sharing the proprietary technology and data housed at its U.S. operation with its China unit.

TuSimple shortly after said it planned to sell its China unit, though it later changed its mind. Last year, the company became among the first entities permitted to conduct tests of fully autonomous vehicles on designated roads in Shanghai.

The U.S. actions are beginning to impinge on TuSimple's China plans. In prohibiting TuSimple from sharing proprietary information, the federal judge's order last week in the shareholder lawsuit in San Diego also said the company's plans to liquidate its U.S. assets and move overseas would leave shareholders with "no legal recourse for their claims."

To comply, TuSimple temporarily suspended its China operations this week and told its staff to take vacation for a few weeks, leaving early for Chinese Lunar New Year in mid-February, company staff members said.

*—Jim Oberman and Elisa Cho contributed to this article.*

Write to Kate O'Keeffe at kathryn.okeeffe@wsj.com, Heather Somerville at heather.somerville@wsj.com, Yang Jie at jie.yang@wsj.com and Aruna Viswanatha at aruna.viswanatha@wsj.com

# EXHIBIT 44

## <u>REDACTED</u>

**(CONFIDENTIAL VERSION OF DOCUMENT
LODGED UNDER SEAL PURSUANT TO
TEMPORARY RESTRAINING ORDER)**

# EXHIBIT 45

## **<u>REDACTED</u>**

**(CONFIDENTIAL VERSION OF DOCUMENT
LODGED UNDER SEAL PURSUANT TO
TEMPORARY RESTRAINING ORDER)**

# EXHIBIT 46

# EXHIBIT 46

15-12G 1 d625582d1512g.htm 15-12G

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

## FORM 15

**CERTIFICATION AND NOTICE OF TERMINATION OF REGISTRATION
UNDER SECTION 12(g) OF THE SECURITIES EXCHANGE ACT OF 1934
OR SUSPENSION OF DUTY TO FILE REPORTS UNDER SECTIONS 13 AND 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934.**

**Commission File Number   001-40326**

# TuSimple Holdings Inc.
**(Exact name of registrant as specified in its charter)**

**9191 Towne Centre Drive, Suite 150
San Diego, CA 92122
(619) 916-3144**
**(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)**

**Class A Common Stock, par value $0.0001 per share**
**(Title of each class of securities covered by this Form)**

**None**
**(Titles of all other classes of securities for which a duty to file reports under section 13(a) or 15(d) remains)**

Please place an X in the box(es) to designate the appropriate rule provision(s) relied upon to terminate or suspend the duty to file reports:

| | |
|---|---|
| Rule 12g-4(a)(1) | ☒ |
| Rule 12g-4(a)(2) | ☐ |
| Rule 12h-3(b)(1)(i) | ☒ |
| Rule 12h-3(b)(1)(ii) | ☐ |
| Rule 15d-6 | ☐ |
| Rule 15d-22(b) | ☐ |

Approximate number of holders of record as of the certification or notice date: 133

Pursuant to the requirements of the Securities Exchange Act of 1934, TuSimple Holdings Inc. has caused this certification/notice to be signed on its behalf by the undersigned duly authorized person.

Date: February 8, 2024

By:     /s/ Eric Tapia
Name:   Eric Tapia
Title:   Chief Financial Officer

Instruction: This form is required by Rules 12g-4, 12h-3, 15d-6 and 15d-22 of the General Rules and Regulations under the Securities Exchange Act of 1934. The registrant shall file with the Commission three copies of Form 15, one of which shall be manually signed. It may be signed by an officer of the registrant, by counsel or by any other duly authorized person. The name and title of the person signing the form shall be typed or printed under the signature.