BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Aaron P. Arnzen (SBN 218272)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:    (858) 914-2001
Facsimile:    (858) 914-2002

*Attorneys for Plaintiffs*
*Norman Wilhoite and Judith Wilhoite*

[Additional counsel listed on signature page.]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMAN WILHOITE and JUDITH WILHOITE, derivatively on behalf of TUSIMPLE HOLDINGS, INC., | Case No. 23cv2333 BEN (MSB) |
| Plaintiffs, | The Honorable Roger T. Benitez |
| vs. | **Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement** |
| XIAODI HOU, MO CHEN, CHENG LU, GUOWEI "CHARLES" CHAO, and HYDRON, INC., | |
| Defendants, | Date:        July 9, 2025 |
| - and - | Time:        10:30 a.m. |
| TUSIMPLE HOLDINGS, INC., | Courtroom:  5A (Schwartz) |
| Nominal Defendant. | Judge:        Hon. Roger T. Benitez |

# Table of Contents

I.      INTRODUCTION ....................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................3

    A.     Factual Background.................................................................3

    B.     Procedural Background and Settlement Negotiations.............................4

        1.     The California Action ............................................4

        2.     The Delaware Action ...............................................8

        3.     Settlement Negotiations..............................................9

        4.     Preliminary Approval and Notice to Shareholders.....................10

III.    BENEFITS OF THE PROPOSED SETTLEMENT......................................12

IV.     LEGAL STANDARDS FOR FINAL APPROVAL .......................................14

V.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND THUS WARRANTS FINAL APPROVAL..................15

    A.     The Settlement Confers Substantial Benefits on TuSimple.................15

    B.     Consideration of the Risks, Costs and Delays of Continued Litigation Weighs in Favor of Granting Final Approval of the Settlement ......................................................................17

    C.     Plaintiffs' Counsel Conducted Substantial Discovery............................21

    D.     The Settlement Is the Product of Arm's-Length Negotiations by Experienced Counsel......................................................22

    E.     TuSimple Shareholders Have Not Opposed Final Approval of the Settlement ....................................................................25

VI.     CONCLUSION................................................................................25

# Table of Authorities

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*,
 85 Cal. App. 4th 1135 (2000) ................................................................................ 25

*Avery Dennison Corp. v. Four Pillars Enter. Co.*,
 45 F. App'x 479 (6th Cir. 2002) ............................................................................ 15

*Boyd v. Bechtel Corp.*,
 485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................ 21

*Chiulli v. Hardwicke Cos., Inc.*,
 1985 Del. Ch. LEXIS 450 (Del. Ch. Feb. 11, 1985) ............................................ 25

*Cohn v. Nelson*,
 375 F. Supp. 2d 844 (E.D. Mo. 2005) .............................................................. 16, 17

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001) ..................................................................................... 22

*Girsh v. Jepson*,
 521 F.2d 153 (3d Cir. 1975) ................................................................................... 21

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ................................................................................ 22

*Hughes v. Microsoft Corp.*,
 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 21, 2001) .................................. 23

*In re AOL Time Warner S'holder Derivative Litig.*,
 2006 U.S. Dist. LEXIS 63260 (S.D.N.Y. Sept. 6, 2006) ...................................... 22

*In re Apple Computer, Inc. Derivative Litig.*,
 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ............................... 15, 25

*In re Atmel Corp. Derivative Litig.*,
 2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ....................................................... 23

*In re Austrian & German Bank Holocaust Litig.*,
 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................................... 23

*In re Emerging Commc'ns, Inc. S'holders Litig.*,
 2004 Del. Ch. LEXIS 70 (Del. Ch. May 3, 2004) ................................................. 19

*In re Franklin Wireless Corp. Derivative Litig.*,
 2024 U.S. Dist. LEXIS 47516 (S.D. Cal. Mar. 18, 2024) ..................................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) .................................................................................. 21

*In re MRV Commc'ns, Inc. Derivative Litig.*,
   2013 U.S. Dist. LEXIS 86295 (C.D. Cal. June 6, 2013) ......................................... 22

*In re NVIDIA Corp. Derivative Litig.*,
   2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 19, 2008) ..................................... 14

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................... 14, 17, 23

*In re PaineWebber P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................. 19

*In re SmithKline Beckman Corp. Sec. Litig.*,
   751 F. Supp. 525 (E.D. Pa. 1990) ........................................................................... 25

*In re Xoma Corp. Sec. Litig.*,
   1992 U.S. Dist. LEXIS 10502 (N.D. Cal. July 10, 1992) ....................................... 14

*Lee v. Fisher*,
   70 F.4th 1129 (9th Cir. 2023) .................................................................................. 18

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ......................................................................... 14, 17, 18

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) .................................................................................................. 17

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................... *passim*

*Rome v. Archer*,
   197 A.2d 49 (Del. 1964) ........................................................................................... 25

*Ryan ex rel. Maxim Integrated Prods. v. Gifford*,
   2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009) ..................................................... 25

*Sved v. Chadwick*,
   783 F. Supp. 2d 851 (N.D. Tex. 2009) .................................................................... 21

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ..................................................................................... 14

*True v. Am. Honda Motor Co.*,
   2009 U.S. Dist. LEXIS 29814 (C.D. Cal. Mar. 25, 2009) ...................................... 24

*Unite Nat'l Ret. Fund v. Watts*,
   2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 27, 2005) ............................................ 17

*United States v. McInnes*,
   556 F.2d 436 (9th Cir. 1977) ................................................................................... 14

*US Trinity Def., LLC v. DTV Arms, LLC*,
   2023 WL 3681686 (E.D. Tex. Mar. 7, 2023) .......................................................... 15

Memorandum in Support of Motion for                          Case No. 23cv2333 BEN (MSB)
Final Approval of Settlement

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910) .......................................................................................... 14

**Statutes**

18 U.S.C. § 1836 ................................................................................................... 4

8 Del. Code. § 220 ........................................................................................... 8, 22

Cal. Civ. Code § 3426.1 ...................................................................................... 4

**Rules**

Fed. R. Civ. P. 23.1 ......................................................................................... 5, 14

**Other Authorities**

Laarni T. Bulan & Matthew Davis,
   *Parallel Derivative Action Settlement Outcomes:*
   *2023 Review and Analysis* (Cornerstone Research 2024) ............................. 16

iv

# I.  INTRODUCTION

Plaintiffs Norman Wilhoite and Judith Wilhoite (the "California Plaintiffs") respectfully submit this memorandum in support of their motion for (1) final approval of the proposed settlement (the "Settlement") of the shareholder derivative claims brought on behalf of Nominal Defendant TuSimple Holdings, Inc. ("TuSimple" or the "Company"); and (2) entry of the Final Judgment and Order of Dismissal with Prejudice.

On April 16, 2025, the Court granted preliminary approval of the Settlement and approved the Notice of the Settlement to TuSimple shareholders, which Notice was duly provided consistent with the terms of the December 18, 2024 Stipulation of Settlement (the "Stipulation").[1]  To date, no shareholder objections to the Settlement have been filed.[2]  The Settling Parties now request that the Court grant final approval of the Settlement.

The Settlement is the product of extensive, arm's-length negotiations among Plaintiffs, the Settling Defendants,[3] and TuSimple (collectively, the "Settling Parties") with the assistance of two experienced mediators: United States Magistrate Judge Michael S. Berg ("Judge Berg") and the Hon. Layn R. Phillips (Ret.) of Phillips ADR Enterprises ("Judge Phillips").  *See* Omnibus Declaration of Albert Y. Chang ("Chang Decl.") ¶ 3.  Pursuant to the Settlement terms, the Settling Defendants will (1) pay $42,500,000, which amount (less fees and expenses) will be transferred to TuSimple; and (2) recognize that the Actions played a substantial role in certain important corporate governance reforms adopted by the Company.  *Id.* ¶ 4; Stipulation ¶¶ 1.39, 2.2–2.6.  These governance reforms include:

---

[1] A copy of the Stipulation was submitted as Exhibit 1 to the December 19, 2024 motion for preliminary approval of the proposed Settlement (Dkt. No. 281-3).  This memorandum adopts all terms defined in the Stipulation.

[2] The filing deadline for objections is June 18, 2025.

[3] The Settling Defendants include Defendants in both the California and Delaware Actions, *i.e.*, Hydron, Inc. ("Hydron"), Mo Chen, Cheng Lu, Guowei "Charles" Chao, Brad Buss, Karen Francis, and Reed Werner.  Defendant Xiaodi Hou — a Defendant in both the California and Delaware Actions — is not a party to the Settlement.

Memorandum in Support of Motion for
Final Approval of Settlement

Case No. 23cv2333 BEN (MSB)

- amendments to the Amended and Restated Cooperation Agreement, dated April 3, 2024, by and among TuSimple and Mo Chen (the "Cooperation Agreement"), under which Defendant Chen agreed that he and Hydron will refrain from engaging in any related party transactions with the Company or any other Company advancement of Hydron business for a period of two years, unless approved by the Company's independent directors; and

- reaffirming the Mutual Confidentiality and Nondisclosure Agreement (the "Nondisclosure Agreement") between TuSimple and Hydron.

Chang Decl. ¶ 4; Stipulation ¶¶ 2.6–2.7. Defendants and TuSimple acknowledge that the California and Delaware Actions played a substantial role in the amendment of the Cooperation Agreement, which Plaintiffs believe has provided and will provide benefits to TuSimple and its current shareholders. Chang Decl. ¶ 5; Stipulation ¶ 2.6. In addition to helping reduce the likelihood that the wrongdoing alleged will recur, the reforms in the Settlement will enhance shareholder value by improving TuSimple's corporate governance. *See* Chang Decl. ¶¶ 43–44. These substantial benefits to TuSimple and its shareholders — together with the $42.5 million cash recovery — fully justify final approval of the Settlement. *See* § V.A., *infra*.

The Settlement confers benefits upon TuSimple and its shareholders without the risks and expenses of further litigation and is an outstanding resolution for TuSimple of a case of substantial complexity and cost. In addition to the substantial $42.5 million recovery and the benefit to TuSimple of the corporate governance achieved, Plaintiffs have taken into account practical considerations associated with litigation risk, such as the uncertainties in predicting the outcome of risky, complex litigation, and the time and expense necessary to prosecute the Actions through trial, post-trial motions, and likely further appeals. Chang Decl. ¶¶ 42–46. Plaintiffs' Counsel reached this determination after:

- conducting an extensive, independent investigation;

- carefully reviewing and analyzing non-public documents;

2

- deposing several witnesses;
- rigorously evaluating the strengths and weaknesses of the claims and defenses; and
- carefully evaluating the reforms adopted by TuSimple in response to the Actions weighed against the risks, costs, and delays of attempting to improve the result through continued litigation.

*Id.* ¶¶ 59–61.  The fairness, reasonableness, and adequacy of the Settlement are further confirmed by the fact that, to date, none of TuSimple's thousands of shareholders have objected to the Settlement despite having been notified of their right to do so.  *Id.* ¶ 42.

Given these facts, and based on their collective decades of experience in shareholder derivative litigation, Plaintiffs' Counsel respectfully submit that the Court should approve the Settlement and enter the Final Judgment and Order of Dismissal with Prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

TuSimple is a Delaware corporation headquartered in San Diego, California. TuSimple develops advanced self-driving technologies specifically designed for heavy-duty trucks.  Chang Decl. ¶ 8.

On February 18, 2022, TuSimple filed a Form 8-K with the United States Securities and Exchange Commission ("SEC"), disclosing that in connection with a review of TuSimple by the Committee on Foreign Investment in the United States ("CFIUS"), "the Company entered into a National Security Agreement ('NSA') with the U.S. government[.]" *Id.* ¶ 9.  Under the NSA, TuSimple agreed to "limit access to certain data and adopt a technology control plan, appoint a security officer and a security director, establish a government security committee of the board of directors ..., and periodically meet with and report to certain CFIUS monitoring agencies[.]"  *Id.*  Also under the NSA, directors of Sun Dream Inc., one of TuSimple's stockholders, agreed to refrain from participating on TuSimple's board of directors upon expiration of the terms they were serving.  *Id.*

Memorandum in Support of Motion for                                  Case No. 23cv2333 BEN (MSB)
Final Approval of Settlement

On October 31, 2022, TuSimple filed a Form 8-K with the SEC, disclosing that an internal investigation identified information indicating that "during 2021 Company employees spent paid hours working on matters for Hydron Inc."; that "such paid hours had an estimated value of less than $300,000[;]" and that "[t]his related party transaction was not presented to, or approved by, the Audit Committee as required by the Company's Code of Conduct." *Id.* ¶ 10. The Form 8-K also disclosed that during 2022, "the Company shared confidential information with Hydron and its partners, which was not brought to the attention of the Audit Committee and Government Security Committee, and before entering into relevant non-disclosure and other cooperation agreements." *Id.*

By December 4, 2023, the Company had announced that it was in the process of "winding down its U.S. business[,]" including through sales of U.S. assets to assist with the Company's strategic shift to the Asia-Pacific region. *Id.* ¶ 11.

On November 13, 2023, Defendant Chen signed and filed a Certificate of Surrender on behalf of Hydron with the California Secretary of State's office. The form stated that Hydron "surrenders its rights and authority to transact intrastate business in the State of California" and that "[t]he corporation revokes its designation of agent for service of process in California." *Id.* ¶ 12.

**B.    Procedural Background and Settlement Negotiations**

**1.    The California Action**

**The TRO and PI Proceedings in the California Court**: The California Plaintiffs commenced the California Action on December 22, 2023, alleging, among other things, that the California Defendants caused TuSimple to transfer its trade secrets to Hydron, a company under Chen's control, without proper consideration. Dkt. No. 1 ¶¶ 135, 153. The California Plaintiffs asserted three claims derivatively on behalf of TuSimple: (1) violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.*; (2) violations of the California Uniform Trade Secrets Act, CAL. CIV. CODE § 3426.1 *et seq.*; and (3) civil conspiracy. *Id.* On January 5, 2024, the California Plaintiffs moved for a temporary

restraining order ("TRO") and expedited discovery on the basis that, absent injunctive relief, the California Defendants could continue expatriating TuSimple's trade secrets to Hydron and to China.  Dkt. No. 8; *see also* Dkt. No. 8-1 at 18–20.

On January 18, 2024, Defendant Charles Chao — the Company's former Board chair and, at relevant times, an investor in both TuSimple and Hydron — moved to quash service and/or to dismiss the claims against him for lack of personal jurisdiction.  Dkt. No. 32.  On March 18, 2024, Plaintiffs filed their brief in opposition.  Dkt. No. 136.  On March 25, 2024, Chao filed his reply brief in support of his motion.  Dkt. No. 145; Chang Decl. ¶ 14.

The Court heard oral argument on the TRO and discovery motions on January 22, 2024 and subsequently entered a TRO and discovery order that, among other things, restricted the flow of TuSimple's U.S.-based trade secrets to Hydron and TuSimple's China-based business and limited the use of TuSimple's U.S.-based assets.  Dkt. No. 36.  The Court determined that the California Plaintiffs raised "serious questions regarding the merits" of their claims.  *Id.* at 5.  After further briefing, the Court modified the TRO on February 2, 2024, based on TuSimple's input.  *See* Dkt. No. 50; Chang Decl. ¶ 15.

The discovery order also allowed the California Plaintiffs to obtain discovery in support of their anticipated motion for preliminary injunction ("PI").  Dkt. No. 36 at 7.  The discovery order required TuSimple to produce, by February 6, 2024, "documents in their possession, custody or control" sufficient to "show the location of TuSimple's trade secrets" and "identify any proprietary information and/or intellectual property belonging to TuSimple that has been disclosed or transferred to Hydron."  *Id.*; Chang Decl. ¶ 16.

TuSimple moved to dismiss the California Action on January 16, 2024 based on: (1) TuSimple's forum-selection clause designating Delaware as the exclusive forum; (2) the California Plaintiffs' alleged failure to plead demand futility under Rule 23.1; and (3) the California Plaintiffs' alleged failure to state a claim for trade-secret misappropriation.  Dkt. No. 27.  On February 12, the Court held a hearing on TuSimple's motion to dismiss.  Dkt. No. 76.  Although the Court stated its tentative inclination to "deny the motion to dismiss

without prejudice … on all three grounds," the Court has not ruled on TuSimple's motion to dismiss, which remains pending.  *See* Chang Decl. ¶ 17.

On February 9, 2024, the California Plaintiffs moved to direct TuSimple to comply with the discovery order and produce responsive documents in the possession of TuSimple's wholly owned Chinese subsidiaries.  Dkt. No. 70.  On March 7, Judge Berg granted Plaintiffs' motion to compel.  Dkt. No. 122.  TuSimple moved to set aside Judge Berg's order on March 15, which motion remains pending.  Dkt. No. 134.

Also on February 9, 2024, the California Plaintiffs moved for a PI.  Dkt. No. 73. After hearing arguments on the motion on March 12, the Court continued the PI hearing to allow the California Plaintiffs to conduct further discovery.  Chang Decl. ¶ 19.  The Court issued an order on March 13, extending the TRO through April 8, "[b]ased on the strength of the circumstantial evidence and the need for a fully developed record consistent with the goals of expedited discovery[.]"  Dkt. No. 130.  The Court also granted the California Plaintiffs leave to depose Defendant Chen (TuSimple's co-founder and Executive Chairman and former CEO) and others.  *See* Mar. 12, 2024 Hr'g Tr. 66–69.

To allow sufficient time to conduct further discovery, on March 28, 2024, the California Plaintiffs moved to extend the TRO, which motion TuSimple opposed.  Dkt. No. 152.  On March 29, the Court granted the motion and extended the TRO to April 29. Dkt. No. 160.  On April 17, the California Plaintiffs moved again to extend the TRO, which motion TuSimple opposed.  Dkt. No. 190.  The Court granted the California Plaintiffs' motion on April 22 and extended the TRO to May 13.  Dkt. No. 194.  After additional briefing and hearings on discovery issues, in April 2024, the California Plaintiffs deposed Defendants Chen, Lu (TuSimple's CEO from June 2020 to March 2022, and from November 2022 to the present), and former interim TuSimple CEO Ersin Yumer. TuSimple also produced documents to the California Plaintiffs.  Chang Decl. ¶ 21.

On May 3, 2024, the California Plaintiffs submitted supplemental briefing on their PI motion.  Dkt. No. 208.  On May 8, the California Defendants responded to the California

Memorandum in Support of Motion for                                    Case No. 23cv2333 BEN (MSB)
Final Approval of Settlement

Plaintiffs' supplemental brief. Dkt. No. 212. Upon receipt of the parties' supplemental briefing and evidence, on May 9, the Court *sua sponte* extended the TRO to June 10 and set the PI hearing for the same day. Dkt. No. 216.

**The Ninth Circuit Proceedings**: On March 15, 2024, TuSimple sought interlocutory review in the United States Court of Appeals for the Ninth Circuit of the March 13, 2024 order extending the TRO and of the TRO-related rulings. Dkt. No. 135. On March 18, TuSimple sought an emergency stay of the TRO and related discovery pending appeal. C.A. No. 24-1608, Dkt. No. 3.1. The California Plaintiffs opposed TuSimple's emergency motion and sought dismissal for want of appellate jurisdiction. *See* C.A. No. 24-1608, Dkt. No. 12.1. On March 26, the Ninth Circuit denied TuSimple's emergency motion for a stay and denied the California Plaintiffs' request for dismissal "without prejudice to renewing the arguments in the answering brief." Chang Decl. ¶ 23.

TuSimple subsequently appealed the orders extending the TRO dated March 29, 2024, April 22, 2024, and May 9, 2024 (the "Appeals"). The Appeals were consolidated and proceeded to merits briefing on an expedited basis. *See* C.A. No. 24-1608, Dkt. No. 20.1. TuSimple filed its opening brief on April 15. The California Plaintiffs filed their answering brief on May 20. C.A. No. 24-1608, Dkt. No. 35.1. TuSimple filed its reply brief on June 10. The California Plaintiffs filed their supplemental brief on June 25. C.A. No. 24-1608, Dkt. No. 56.124. TuSimple and the California Plaintiffs also filed additional supplemental briefs regarding jurisdiction on December 16. Chang Decl. 24.

On December 6, 2024, TuSimple moved the Ninth Circuit for stay of the appellate proceedings pending resolution of the Settlement approval proceedings in this Court. Plaintiffs did not oppose the motion. *Id.* ¶ 25. On December 12, the Ninth Circuit granted TuSimple's unopposed motion, stayed the appeals, and directed TuSimple to file status reports regarding the Settlement every 60 days. *Id.* On January 30, 2025, the Ninth Circuit, upon learning that this Court had set a date for the Settlement Hearing (July 9, 2025), ordered that the parties submit a joint status report by July 19. *See id.*

Memorandum in Support of Motion for                                    Case No. 23cv2333 BEN (MSB)
Final Approval of Settlement

**The Status of Proceedings**: Between April and June 2024, Lu, Chen, and Hou moved to dismiss the California Complaint. Dkt. Nos. 172, 184, 234. Those motions remain pending. On May 20, Hydron answered the California Complaint. Dkt. No. 224.

In April 2024, while the Appeals were proceeding in the Ninth Circuit, the California Plaintiffs and TuSimple submitted competing briefs to the Court (in response to the Court's request) regarding the scope of its jurisdiction during the pendency of the Appeals. Dkt. Nos. 180, 181, 186, 187. Based on this briefing, on June 5, the Court extended the TRO to September 15, and stayed all proceedings pending resolution of the Appeals. Dkt. No. 237.

### 2. The Delaware Action

The lawsuits that constitute the Delaware Action were commenced between November 28, 2022 and March 6, 2023, with the operative complaint in the Delaware Action filed on July 24, 2023, alleging, among other things, that the Delaware Defendants caused TuSimple to transfer its trade secrets to Hydron without proper consideration, and that Chen and Hou orchestrated a purge that removed all directors other than Hou from TuSimple's board of directors and reinstated Chen and Lu as directors. Chang Decl. ¶ 28. The Delaware Plaintiffs asserted six claims derivatively on behalf of TuSimple: (1) breach of fiduciary duty by Chen and Hou for transfer of TuSimple's intellectual property to Hydron; (2) breach of fiduciary duty by Chen and Hou for removing the directors of TuSimple other than Hou; (3) unjust enrichment against Chen and Hou; (4) breach of fiduciary duty by certain of the Delaware Defendants who were members of the audit committee of TuSimple's board of directors; (5) an aiding and abetting claim against Hydron; and (6) an unjust enrichment claim against Hydron. *Id.* Before filing the operative complaint in the Delaware Action, the Delaware Plaintiffs obtained 551 pages of non-public documents from TuSimple under 8 DEL. CODE § 220 relating to the claims alleged. *Id.*

On March 13, 2023, TuSimple's board of directors formed a special litigation committee (the "SLC") to assess and determine whether the pursuit of derivative claims in the Delaware Action would be in the Company's best interests. *Id.* ¶ 29.

On August 18, 2023, the Delaware Court entered an agreed Stay Order, staying the Delaware Action until February 9, 2024 to permit the SLC to conduct its investigation. In exchange for the Delaware Plaintiffs agreeing to the Stay Order, the SLC provided the Delaware Plaintiffs with periodic updates regarding the status of its investigation, as well as copies of its enabling resolutions. The Delaware Plaintiffs' counsel met with the SLC on January 19, 2024 and March 10, 2024 to discuss the status of the investigation and to provide the Delaware Plaintiffs' input and suggestions for the investigation. *Id.* ¶ 30.

On February 5, 2024, the Court entered an agreed Order extending the Stay Order until April 9, and on April 10, the Court extended the Stay Order until June 4. *Id.* ¶ 31.

### 3.    Settlement Negotiations

In April 2024, Plaintiffs and Defendants commenced a mediation process under the supervision of Judge Phillips. On May 2, Plaintiffs, Defendants, the SLC, and their counsel participated in an all-day in-person mediation session before Judge Phillips in New York City. Chang Decl. ¶ 32. Mediation statements were submitted before the mediation session. TuSimple provided the Delaware Plaintiffs with nearly 5,000 pages of documents produced in connection with the California Action, including copies of the transcripts of certain depositions taken in the California Action. After the mediation session, the parties engaged in further settlement negotiations under Judge Phillips's supervision. *Id.*

On July 3, 2024, Judge Phillips issued a mediator's proposal in connection with ongoing settlement efforts. *Id.* ¶ 33. On July 8, the Settling Parties accepted Judge Phillips's proposal to settle the California Action and the Delaware Action in exchange for a cash payment of $42.5 million for the benefit of TuSimple, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court. *Id.* The Settling Parties' agreement-in-principle to settle the Actions was memorialized in a Settlement Term Sheet executed on September 19, 2024 (the "Term Sheet"). *Id.*

In connection with the appeal in the California Action, on July 10, 2024 the Ninth Circuit issued an order granting TuSimple's unopposed motion to stay in light of the

Settlement and staying all appellate proceedings until October 8. *Id.* ¶ 34. TuSimple and the California Plaintiffs provided a status update to the Ninth Circuit on October 1, 2024, informing the Ninth Circuit that the parties to the California Action had agreed in principle to a settlement and were continuing to work towards finalizing the details of the settlement and reducing it to writing. *Id.* The Ninth Circuit stayed appellate proceedings until December 9. On October 16, the Ninth Circuit ordered the parties to submit supplemental briefing by December 16 addressing whether the Ninth Circuit retained jurisdiction of the Appeals in light of the expiration of the TRO. *Id.*

The Delaware Court on July 9, 2024, extended the Stay Order until the California Court renders a decision concerning the Settlement. *Id.* ¶ 35.

Defendant Hou did not sign the Term Sheet and, on October 28, 2024, Judge Berg set an in-person settlement conference for November 19 to attempt to resolve certain issues between Hou and TuSimple regarding the scope of the release in the Settlement. *Id.* ¶ 36. On November 11, Hou moved for a temporary restraining order, expedited discovery, and an order to show cause (the "Hou TRO Motion"). *Id.* On November 19, Plaintiffs' Lead Counsel and counsel for TuSimple, as well as Hou and his counsel, attended a settlement conference before Judge Berg in San Diego, California. *Id.* Judge Berg continued the settlement conference to November 27. *Id.* On November 25, TuSimple and Defendants Chen and Lu, as well as the California Plaintiffs, filed responses to the Hou TRO Motion. *Id.* On November 27, counsel for TuSimple and Hou attended an additional settlement conference before Judge Berg, which did not resolve the settlement issues. *Id.*

On December 18–19, 2024, the Settling Parties executed the Stipulation. The Stipulation (together with the Exhibits thereto) reflects the final and binding agreement among the Settling Parties. *Id.* ¶ 37.

### 4.     Preliminary Approval and Notice to Shareholders

On December 19, 2024, Plaintiffs filed a Motion for Preliminary Approval of Settlement. Dkt. No. 281; *see also* Chang Decl. ¶ 38. On January 13, 2025, Defendant Hou

filed his Opposition and Objections to Plaintiffs' Motion for Preliminary Approval of Settlement. Dkt. No. 285. Among other things, Hou argued that (1) "there [was] not a single fact in the Motion for preliminary approval on which the Court could conclude that the settlement consideration of $42.5 million paid to the company (by the insurers) [was] fair or adequate" and (2) the governance reforms "achieved nothing" because Chen had purportedly changed "the Company's business from autonomous driving to video games" and "continue[d] to enrich himself at Company expense, this time funding his video game ventures." *Id.* at 9, 16. On January 17, Plaintiffs filed a reply. Dkt. No. 286.

This Court held a hearing on the Motion for Preliminary Approval on January 27, 2025. Chang Decl. ¶ 39. At that hearing, this Court observed "that shareholder derivative actions are very, very difficult to win" and asked regarding the monetary component of the Settlement whether Hou would "be willing to post a bond … in the event [the Court] were to reject the settlement[.]" Jan. 27, 2025 Hr'g Tr. at 12. Hou's counsel demurred but clarified that Hou did not object to the dollar value of the Settlement. *Id.* at 12, 15 ("We're not looking at attacking the number, 42.5. … We're not objecting to the 42.5."). Regarding the governance component of the Settlement, this Court observed that Hou's "complaints about corporate governance [were] very different than the complaint that was originally filed in this case" and that his "claim really [was] a different cause of action" that was "not being resolved in this case." *Id.* at 36–67. The Court then concluded that "there's enough evidence for me to find that the settlement is fair, adequate and reasonable." *Id.* at 37.

After the hearing, on February 21, the Court directed the parties to file statements under seal addressing certain questions concerning the Settlement. Dkt. No. 290 at 2; Chang Decl. ¶ 40. The parties filed their submissions on February 28. Dkt. Nos. 293 (Chao), 295 (Hou), 298 (Plaintiffs), 301 (Lu), 303 (TuSimple), 307 (Hydron), 309 (Chen).

On April 16, 2025, this Court entered the Preliminary Approval Order. Dkt. No. 312. In April 2025, as directed by the Preliminary Approval Order, TuSimple caused a copy of the Postcard Notice to be emailed or mailed by First-Class Mail (where email addresses

Memorandum in Support of Motion for
Final Approval of Settlement

Case No. 23cv2333 BEN (MSB)

are not available) to all record and beneficial holders of TuSimple common stock as of October 28, 2024, the record date for TuSimple's annual shareholder meeting. Chang Decl. ¶ 41. TuSimple posted a copy of the Notice of Pendency and Proposed Settlement and a copy of the Stipulation on the "Investor Relations" section of TuSimple's website. *Id.* TuSimple also caused the publication of the Summary Notice of Pendency and Proposed Settlement of Derivative Actions on two separate occasions in the national edition of *The Wall Street Journal* and on one occasion over the PR Newswire. *Id.*

Pursuant to the Preliminary Approval Order, the Notice directed that any objections to the Settlement be filed by June 18, 2025. *Id.* ¶ 42. To date, not a single TuSimple shareholder has objected to the Settlement. *Id.*

## III.    BENEFITS OF THE PROPOSED SETTLEMENT

The Settlement positions the Company to recoup significant funds — $42.5 million — from Defendants, addresses the core trade secret misappropriation concerns raised in the Actions, and offers TuSimple and its shareholders the benefit of substantial and immediate corporate governance reforms that improve the Company's internal controls. Chang Decl. ¶ 43; Stipulation ¶¶ 1.39, 2.2–2.6.

Plaintiffs alleged that Defendants exploited the Company's inadequate safeguards over its trade secrets and insufficient internal controls surrounding related party transactions with Defendant Chen and entities with which he was associated. Chang Decl. ¶ 43. Pursuant to the terms of the Settlement, the Settling Defendants will: (1) pay $42.5 million, which amount (less fees and expenses) will be transferred to TuSimple under the Settlement; and (2) recognize that the Actions played a substantial role in certain important corporate governance reforms adopted by the Company. Chang Decl. ¶ 44; Stipulation ¶¶ 1.39, 2.2–2.6. These corporate governance reforms include:

- Amendments to the Cooperation Agreement, under which Defendant Chen has agreed not to "solicit, initiate, discuss, negotiate, enter into or effectuate, directly or indirectly, any related party transaction between the Company or any of its

subsidiaries and Hydron, Inc. or any of its subsidiaries, or … cause any funds of the Company or any of its subsidiaries to be used for or to advance the business of Hydron, Inc. or its subsidiaries," for a period of two years from January 16, 2024, unless approved by the Company's independent directors.  Chang Decl. ¶ 44(a); Stipulation ¶ 2.6.

- Reaffirmation of the Nondisclosure Agreement between TuSimple and Hydron. Specifically, TuSimple and Hydron affirm that they are parties to the Nondisclosure Agreement, entered into effective as of June 21, 2022, and that the Nondisclosure Agreement continues to remain binding on TuSimple and Hydron.  Chang Decl. ¶ 44(b); Stipulation ¶ 2.7.

Defendants and TuSimple agree that the California and Delaware Actions were a substantial cause of the Company's adoption and enactment of the corporate governance reforms, which Plaintiffs believe have provided and will provide benefit to TuSimple and its current shareholders.  Chang Decl. ¶ 45; Stipulation ¶ 2.6.  These benefits are substantial and further support final approval of the Settlement.  Chang Decl. ¶¶ 46–47.

The Settling Parties have not agreed upon the amount of any fee and expense award to Plaintiffs' Counsel in recognition of the benefits provided to TuSimple as a result of the prosecution and settlement of the Actions.  *Id.* ¶ 48.  Contemporaneously with the filing of this motion for final approval of the Settlement, Plaintiffs have moved this Court for an award of reasonable fees and expenses, reimbursement of litigation expenses, and approval of the service awards to Plaintiffs (to be paid out of the Fee and Expense Award).  *Id.* Under the Stipulation, the Settling Defendants or their insurance carrier(s) are obligated to pay any award of fees and expenses approved by this Court.  Stipulation ¶¶ 5.1–5.2.

///
///
///
///

## IV.    LEGAL STANDARDS FOR FINAL APPROVAL

It is well-settled that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  Settlements are particularly favored "'in class actions and other complex cases [such as derivative actions] where substantial judicial resources can be conserved by avoiding formal litigation.'"  *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, at *7 (N.D. Cal. Dec. 19, 2008) (citation omitted).[4]  "Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'"  *See*, *e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (citation omitted).

Rule 23.1 requires court approval of any settlement of shareholder derivative actions. FED. R. CIV. P. 23.1(c).  District courts must exercise "sound discretion" in evaluating a settlement.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit," however, "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud … or collusion between[] the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  In applying this "fair-reasonable-and-adequate" test, courts consider: (a) the benefits conferred on the corporation; (b) the risks, costs, and delays of continued litigation; (c) the stage of proceedings; (d) whether the settlement is the product of arm's-length negotiations by experienced counsel; and (e) the reaction of shareholders to the proposed settlement.  *See id.*; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377–78 (9th Cir. 1995) (affirming approval of a derivative settlement).

As discussed below, each of these factors supports final approval of the Settlement.

---

[4] *See also*, *e.g.*, *In re Xoma Corp. Sec. Litig.*, 1992 U.S. Dist. LEXIS 10502, at **3–4 (N.D. Cal. July 10, 1992) ("[t]he law favors settlement of cases and quieting of litigation, particularly in complex class actions and derivative litigation"); *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) ("the settlement process [is] favored in the law"); *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977) ("there is an overriding public interest in settling and quieting litigation").

## V.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND THUS WARRANTS FINAL APPROVAL

### A.    The Settlement Confers Substantial Benefits on TuSimple

The "principal factor" in determining whether to approve the settlement of a shareholder derivative action "is the benefit to [the company] as compared to the risks" of continued litigation. *In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195, at *8 (N.D. Cal. Nov. 5, 2008) (approving $14 million derivative settlement where the company's net cash recovery exceeded the average recovery in shareholder derivative litigation as reported by Cornerstone Research).

As discussed above, the Settlement includes a significant financial component — $42.5 million. Although damages for the sort of trade secret claims at issue here "are difficult to calculate,"[5] that financial component compares favorably to Plaintiffs' preliminary views of potential damages. Plaintiffs retained an expert during the mediation who assisted Plaintiffs in preparing a preliminary damages estimate, indicating that the value of Plaintiffs' claims could potentially exceed $100 million. Chang Decl. ¶ 49. This assumed, however, that Plaintiffs could have proven that (1) TuSimple's trade secrets were valuable and (2) Hydron was capable of monetizing them. *Id.* And Plaintiffs' preliminary damages analysis did not account for the fact that "shareholder derivative actions are very, very difficult to win." Jan. 27, 2025 Hr'g Tr. at 12. Even assuming Plaintiffs overcame the various motions to dismiss and appeals that could have wiped out Plaintiffs' claims, Plaintiffs would have had to run the table at trial to secure a roughly $100 million judgment.

The $42.5 million component also compares favorably to recent settlements of shareholder derivative actions, as well as Plaintiffs' preliminary views of potential damages on both a gross and net basis. *See* Chang Decl. ¶¶ 49, 75. In a study of 110 settlements of

---

[5] *Avery Dennison Corp. v. Four Pillars Enter. Co.*, 45 F. App'x 479, 485 (6th Cir. 2002). Because "[d]amages from the misappropriation of trade secrets, moreover, are notoriously difficult to calculate," "courts routinely hold that the harm caused by misappropriating trade secrets is irreparable for purposes of granting a preliminary injunction." *US Trinity Def., LLC v. DTV Arms, LLC*, 2023 WL 3681686, at *7 (E.D. Tex. Mar. 7, 2023). Hence why Plaintiffs sought (and obtained) a TRO and sought a PI as well.

derivative actions between 2019 and 2023 that featured similar underlying allegations as "parallel" securities class actions, Cornerstone Research concluded that (1) only 29 of such cases (26%) included any monetary component; and (2) of those 29 cases with a monetary component, the median derivative settlement was $8.9 million.  Laarni T. Bulan & Matthew Davis, *Parallel Derivative Action Settlement Outcomes: 2023 Review and Analysis*, at 2 (CORNERSTONE RESEARCH 2024).[6]  By comparison, the $42.5 million Settlement Amount is well above the 75th percentile identified by Cornerstone in comparable settlements.  *Id.*

In addition to the financial component, the Settlement's corporate governance provisions are expected to provide benefits to TuSimple and its current shareholders.  *See supra* § III.  The amended Cooperation Agreement requires that, unless approved by TuSimple's independent directors, Defendant Chen refrain from, between January 16, 2024 and January 16, 2026, (1) engaging in, directly or indirectly, "any related party transaction between the Company or any of its subsidiaries and Hydron, Inc. or any of its subsidiaries"; and (2) "caus[ing] any funds of the Company or any of its subsidiaries to be used for or to advance the business of Hydron, Inc. or its subsidiaries."  Chang Decl. ¶ 44(a); Stipulation ¶ 2.6.  In addition to these restrictions on Defendant Chen, TuSimple and Hydron have reaffirmed that their June 21, 2022 Nondisclosure Agreement remains binding.  Chang Decl. ¶ 44(b); Stipulation ¶ 2.7.  These reforms are designed to address the trade-secret-misappropriation and improper related-party transactions that formed the basis of this shareholder derivative litigation.  Chang Decl. ¶ 46.  And these reforms help strengthen TuSimple's internal controls by setting a model for any future sharing of trade secrets with other parties, providing long-term benefits to TuSimple and its shareholders.  *Id.*

These are exactly the kind of "corporate governance reforms" that courts have recognized as "provid[ing] valuable benefits to public companies."  *Cohn v. Nelson*, 375 F.

---

[6] *Available at* https://www.cornerstone.com/wp-content/uploads/2024/08/Parallel-Derivative-Action-Settlement-Outcomes-2023-Review-and-Analysis.pdf (last visited June 4, 2025).

Supp. 2d 844, 853 (E.D. Mo. 2005); *see also Maher*, 714 F.2d at 461 (effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it than the dollar amount of any likely judgment). The Supreme Court has held that, because a settlement involving corporate governance reforms alone — without any monetary component — would justify an award of attorneys' fees to counsel for the shareholder plaintiff, a "corporation may receive a 'substantial benefit' from a [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature," because "'corporate therapeutics' … furnish a benefit to all shareholders by providing an important means of enforcement of [a corporation's director and officer obligations]." *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 395–96 (1970) (citation omitted); *see also Unite Nat'l Ret. Fund v. Watts,* 2005 U.S. Dist. LEXIS 26246, at *18 (D.N.J. Oct. 27, 2005) (awarding $9.2 million in fees based on "the great benefit conferred upon [the company] as a result of the new corporate governance principles provided for in the settlement agreement").

**B.    Consideration of the Risks, Costs and Delays of Continued Litigation Weighs in Favor of Granting Final Approval of the Settlement**

In assessing the fairness, reasonableness, and adequacy of a settlement, the Court should balance the benefits of the settlement against the continuing risks of litigation. *Officers for Justice,* 688 F.2d at 625. Derivative actions are fraught with risks. As this Court astutely observed, "shareholder derivative actions are very, very difficult to win." Jan. 27, 2025 Hr'g Tr. at 12. This is consistent with the Ninth Circuit's observation that "the odds of winning [a] derivative lawsuit [are] extremely small." *Pac. Enters.,* 47 F.3d at 378.

Here, weighed against the substantial risk that continued litigation would yield no benefit, the Settlement's guaranteed, immediate, and substantial benefits are plainly fair, reasonable, and adequate. Although Plaintiffs believe in the strength of their trade-secret misappropriation claims, they also recognize the considerable challenges they would face in establishing liability and securing a post-trial monetary judgment for these claims. Plaintiffs' Counsel have also considered the uncertain outcome and the risk of any litigation, especially

Memorandum in Support of Motion for                                    Case No. 23cv2333 BEN (MSB)
Final Approval of Settlement

in complex cases such as the Actions, as well as the difficulties and delays inherent in such litigation. Chang Decl. ¶ 55. Plaintiffs faced several onerous hurdles, both procedural and substantive, including (as set forth in paragraph 55 of the Chang Declaration):

*Venue.* Plaintiffs face Defendants' challenge to venue. *Id.* Relying on the Ninth Circuit's *en banc* decision in *Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023), TuSimple had sought to enforce the forum-selection clause in its Certificate of Incorporation requiring all derivative litigation to be brought in Delaware. *See* Dkt. No. 27-1 at 1.[7]

*Demand Futility.* Aside from the threshold issue of venue, in order to pursue the claims for trade-secret misappropriation on behalf of TuSimple and against TuSimple's directors, Plaintiffs would need to establish that making a demand on TuSimple's board would have been futile because TuSimple's directors (1) were interested in the underlying transactions, (2) lacked independence from interested parties (*i.e.*, Chen), or (3) faced a substantial likelihood of personal liability. Plaintiffs bear the burden of satisfying the demand requirement at all stages, including pleading, summary judgment, and trial. *In re Franklin Wireless Corp. Derivative Litig.*, 2024 U.S. Dist. LEXIS 47516, at *13 (S.D. Cal. Mar. 18, 2024) (summary judgment). Thus, as the Fifth Circuit recognized in *Maher*, shareholder derivative actions are "notoriously difficult and unpredictable." 714 F.2d at 455.

*Substantive Trade Secret Misappropriation Claims.* After clearing the demand-futility hurdle, Plaintiffs would need to prove the underlying trade-secret misappropriation claims. To succeed on those claims, Plaintiffs would have had to prove that (1) the information transmitted to Defendant Hydron in fact constituted proprietary trade secrets; and (2) those trade secrets were in fact misappropriated, *i.e.*, were shared with Hydron without adequate confidentiality agreements or compensation and without a legitimate purpose. Plaintiffs would have to overcome Defendants' defenses, including that:

---

[7] For avoidance of doubt, "[a]ll Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement." *See* Stipulation ¶ 8.4.

- the information that TuSimple shared with Hydron did not constitute "trade secrets" but, rather, was shared for the legitimate purpose of evaluating potential original equipment manufacturer ("OEM") partners, including Hydron;

- the type of information TuSimple shared with Hydron was shared in the ordinary course with other potential OEM partners; and

- TuSimple maintained adequate internal controls to protect its trade secrets, and the confidentiality agreements between TuSimple and Hydron were valid and effective in protecting TuSimple's trade secrets.

*Damages.* Plaintiffs would need to prove the existence of damages arising from the alleged misappropriation, namely that the trade secrets allegedly misappropriated by Hydron were valuable and capable of being monetized by Hydron. Chang Decl. ¶ 49. Plaintiffs would have to overcome Defendants' defense that any information Hydron obtained was of *de minimis* value resulting in no damages. *Id.* ¶ 55. Plaintiffs also would face challenges in establishing damages given that TuSimple's technologies were not commercialized. *Id.* The damages assessments of experts retained by the parties would vary substantially, and the assessment of this crucial element of Plaintiffs' claims would be reduced at trial to a "'battle of the experts.'" *See In re Emerging Commc'ns, Inc. S'holders Litig.*, 2004 Del. Ch. LEXIS 70, at *40 (Del. Ch. May 3, 2004). It is far from certain that a jury would have disregarded Defendants' experts' opinions. Indeed, a jury might have been swayed by defense experts seeking to establish that damages were caused by factors other than Defendants' wrongdoing, or, alternatively, trying to minimize the amount of the Company's damages. *See In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997). Conceivably, a jury could find that there were no damages at all, or that damages were a fraction of the amount asserted by Plaintiffs. *See* Jan. 27, 2025 Hr'g Tr. at 11-12 ("I just tried a derivative action with Mr. Bottini. …. When it was all said and done, the jury came back against one of the members of the board of directors with a 99 cent verdict[.]").

*Discovery.* Substantive issues aside, Plaintiffs faced substantial hurdles in discovery of

19

evidence located in China and from Chinese nationals.  Chang Decl. ¶ 55.  Although
Plaintiffs successfully moved to compel production of documents located in China during
the preliminary injunction phase of the case, TuSimple appealed that ruling, which remains
pending.  Plaintiffs anticipate that obtaining additional documents from China in plenary
discovery would have been difficult, time-consuming, and expensive.  *See id.*

    *Appellate and SLC Risk.*  In addition to risks of litigation in this Court, Plaintiffs faced
uncertainty in other courts.  *Id.*  TuSimple sought review in the Ninth Circuit of this Court's
various temporary restraining orders, raising issues that are potentially dispositive of this
action.  Plaintiffs faced real and material risk of an adverse ruling from the Ninth Circuit.
Moreover, the Delaware Action was stayed pending an investigation by the SLC.  Although
the SLC had not concluded its investigation by the time of the Settlement, the SLC might
have recommended that the Delaware Action be dismissed, which Defendants in this action
might have used to attempt to justify dismissal or disprove Plaintiffs' claims at trial.

    These myriad litigation risks are real and substantial.  *Id.* ¶ 56.  After weighing these
risks against the substantial benefits of the Settlement, Plaintiffs' Counsel — with years of
experience in litigating shareholder derivative actions — determined that the Settlement is
in the best interests of TuSimple and its shareholders.  *Id.*

    In addition to the risks inherent in proceeding, the expense and likely duration of the
Actions would eventually yield diminishing returns for TuSimple.  Discovery, especially
given the need to locate documents and witnesses in China, would have been substantial
and costly on all sides, likely resulting in protracted motion practice followed by a trial
occupying the Court, Settling Parties, witnesses, and attorneys on both sides for a lengthy
duration.  *Id.* ¶ 57.  A prolonged period of pre-trial proceedings and a lengthy and uncertain
trial would not serve the interests of the Company and its shareholders, particularly in light
of the benefits provided by the Settlement.  Furthermore, even if a judgment favorable to
Plaintiffs were obtained, it would likely be the subject of post-trial motions and appeal,
which could prolong the Actions even further.  *Id.*

In sum, consideration of the litigation risks warrants approval of the Settlement.

**C.    Plaintiffs' Counsel Conducted Substantial Discovery**

Courts also consider the extent of discovery completed and the stage of the proceedings together as one factor in determining the fairness, reasonableness, and adequacy of the proposed Settlement.  *Officers for Justice*, 688 F.2d at 625; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616–17 (N.D. Cal. 1979). The Ninth Circuit has noted that "'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citations omitted); *see also Sved v. Chadwick*, 783 F. Supp. 2d 851, 861 (N.D. Tex. 2009) (courts "look[] not to the amount of discovery, but rather to 'whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settl[ement]'").

Here, Plaintiffs' Counsel engaged in extensive investigation, discovery, and other litigation efforts throughout the prosecution of the Actions, including, among other things:

- reviewing TuSimple's press releases, public statements, and SEC filings, as well as media reports concerning the Company;

- researching the applicable law with respect to the claims alleged in the Actions and the potential defenses thereto;

- preparing and filing derivative complaints;

- engaging in multiple hotly contested proceedings, including motions for TRO, preliminary injunction, and expedited discovery;

- obtaining a TRO and expedited discovery;

- reviewing and analyzing substantial document productions, including sensitive, proprietary trade-secret information and confidentiality agreements;

- taking several depositions, including of Defendants Chen and Lu and the Company's former interim CEO;

- defending the Court's orders on interlocutory appeal in the Ninth Circuit;

- participating in informal conferences with Defendants' Counsel regarding the specific facts of the Actions, the perceived strengths and weaknesses of the Actions, and other issues in an effort to facilitate negotiations;

- participating in a day-long mediation and several follow-up conferences; and

- negotiating this Settlement with Defendants.

Chang Decl. ¶¶ 59–61.  The Delaware Plaintiffs' counsel have also reviewed hundreds of pages of internal, non-public documents from TuSimple produced pursuant to 8 DEL. CODE § 220 relating to the claims alleged.  *See* Stipulation at 6.  The accumulation of the information discovered through the above efforts permitted Plaintiffs and Plaintiffs' Counsel to be well informed about the strengths and weaknesses of the cases and to engage in effective settlement discussions with Defendants.  *See* Chang Decl. ¶ 61.

**D.    The Settlement Is the Product of Arm's-Length Negotiations by Experienced Counsel**

A strong presumption of fairness applies to settlements that have been negotiated at arm's-length by experienced counsel and with the assistance of a mediator.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *In re MRV Commc'ns, Inc. Derivative Litig.*, 2013 U.S. Dist. LEXIS 86295, at *9 (C.D. Cal. June 6, 2013) ("'The involvement of experienced [] counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery ha[s] taken place create a presumption that the agreement is fair.'") (citation omitted); *In re AOL Time Warner S'holder Derivative Litig.*, 2006 U.S. Dist. LEXIS 63260, at *8 (S.D.N.Y. Sept. 6, 2006) ("'mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure'") (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).  This presumption applies here because the Settlement resulted from arm's-length negotiations conducted by experienced counsel knowledgeable in complex shareholder derivative litigation and facilitated by Judge Berg and Judge Phillips, both of whom are highly

respected and experienced in complex cases.  Chang Decl. ¶¶ 63, 69, 81; *see also In re Atmel Corp. Derivative Litig.*, 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) ("Judge Phillips' participation weighs considerably against any inference of a collusive settlement.").

First, courts accord "considerable weight" to the recommendation of experienced counsel.  *Hughes v. Microsoft Corp.*, 2001 U.S. Dist. LEXIS 5976, at *21 (W.D. Wash. Mar. 21, 2001) ("counsel's opinion is accorded considerable weight and supports the fairness and adequacy of the proposed settlement"); *Officers for Justice*, 688 F.2d at 625 (same); *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378 ("[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation"); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that the settlement represented the most beneficial result for the class to be a compelling factor).

Here, "the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex … litigation" and should "enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000); *see also First Capital Holdings*, 1992 U.S. Dist. LEXIS 14337, at *8. All counsel possessed a firm understanding of the strengths and weaknesses of their respective claims and defenses.  As discussed above, Plaintiffs and Plaintiffs' Counsel have engaged in extensive investigation, discovery, and other litigation efforts throughout the prosecution of the Actions and have accumulated sufficient information discovered through these efforts to be well-informed about the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants.  *See* Chang Decl. ¶¶ 59, 64.  The absence of an agreement on the amount of attorneys' fees and expenses further illustrates the arm's-length nature of the settlement negotiations.  *Id.* ¶ 65.  The Settling Parties engaged in settlement discussions after they thoroughly evaluated the risks of continued litigation and had sufficient information to support the decision regarding the fairness, adequacy, and reasonableness of the Settlement.  *Id.*

Memorandum in Support of Motion for                                    Case No. 23cv2333 BEN (MSB)
Final Approval of Settlement

Each of the Settling Parties was also represented by zealous and able counsel who negotiated the terms of the Settlement aggressively, in good faith, and at arm's-length. Chang Decl. ¶¶ 66, 68. Plaintiffs' Counsel have litigated scores of shareholder derivative actions to successful resolution and its lawyers are nationally recognized as leaders in the field of shareholder rights litigation. Chang Decl. ¶ 67.[8] Defendants and the SLC are represented by several of the nation's leading corporate defense firms, including Wilmer Cutler Pickering Hale & Dorr, Debevoise & Plimpton, Cooley, Goodwin Proctor, Hogan Lovells US, Gibson Dunn & Crutcher, and King & Spalding. *Id.* ¶ 68.

*Second*, the results achieved in the Settlement were hard-fought. The Settling Parties reached an agreement after an all-day, in-person mediation overseen by Judge Phillips and after weeks of extensive subsequent negotiations, including before Judge Berg. This process demonstrates that the Settlement is "fair, reasonable and adequate to all concerned," and "within the range of possible approval." *Officers for Justice*, 688 F.2d at 625; *True v. Am. Honda Motor Co.*, 2009 U.S. Dist. LEXIS 29814, at **8–9 (C.D. Cal. Mar. 25, 2009). As this Court observed during the January 27, 2025 hearing for preliminary approval:

> Based on my knowledge of the way that [Plaintiffs' and Defendants' counsel] have behaved here in my court over … the last year or so, and given the fact that probably in my opinion one of the best settlement negotiators in the country, our Magistrate Judge Michael Berg, and really respected Judge Layn Phillips, has been involved in this case, I just have a very difficult time understanding what the objection to this settlement is.

Jan. 27, 2025 Hr'g Tr. at 27.

This lengthy, hard-fought history demonstrates that the Settlement was the product of arm's-length negotiations. Thus, the Settlement is entitled to a presumption of fairness.

---

[8] See the resumes of Plaintiffs' Counsel annexed to the Chang Declaration and the declarations of Thomas G. James of Bernstein Litowitz Berger & Grossmann LLP, Jason M. Leviton of Block & Leviton LLP, Christine M. Mackintosh of Grant & Eisenhofer P.A., Mark C. Gardy of Gardy & Notis, LLP, Jeremy Friedman of Friedman Oster & Tejtel PLLC, Brian J. Schall of the Schall Law Firm, D. Seamus Kaskela of Kaskela Law LLC, and Ned Weinberger of Labaton Keller Sucharow LLP.

**E.    TuSimple Shareholders Have Not Opposed Final Approval of the Settlement**

The Settlement's fairness is demonstrated by the fact that TuSimple shareholders have not opposed the Settlement after having received notice and opportunity to do so.  *See Apple Computer*, 2008 U.S. Dist. LEXIS 108195, at *12 ("[another] … factor to consider in evaluating a proposed derivative settlement is shareholder opposition").  Pursuant to the April 16, 2025 Preliminary Approval Order (Dkt. No. 312), TuSimple disseminated notice of the Settlement by sending emails or postcards to TuSimple shareholders, and published the notice through its website, as well as *The Wall Street Journal* and *PR Newswire*.  Chang Decl. ¶ 41.  The Notice contained detailed descriptions of the history of the Actions and proposed Settlement, and the claims that will be released if the Settlement is approved.  *Id.*  The Notice directed that any objections to the Settlement be filed by June 18, 2025.  *Id.* ¶ 42.  As of June 4, 2025, no objection has been filed.  *Id.*

Courts in class-action litigation give substantial weight to the "reaction of the class," which ought to apply with equal force in a derivative settlement.  *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990).[9]  Where, as here, there is no objection, approval of the settlement "would be almost perfunctory."  *Chiulli v. Hardwicke Cos., Inc.*, 1985 Del. Ch. LEXIS 450, at *4 (Del. Ch. Feb. 11, 1985).

## VI.    CONCLUSION

The Settlement achieved — with a $42.5 million recovery and substantial corporate governance reforms for TuSimple and its shareholders — is an excellent result given the risks inherent in the Actions and the risks, complexity and expense if the Actions proceeded in litigation and, ultimately, to trial.  Accordingly, the Settlement is fair, reasonable, and adequate and should be granted final approval by the Court.

---

[9] *See also 7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1153 (2000) (positive reaction from class members favors approval).  Even a small number of objections in the face of overwhelming support is convincing evidence of a proposed settlement's fairness and adequacy.  *See, e.g.*, *Rome v. Archer*, 197 A.2d 49, 58 (Del. 1964) (approving settlement ratified by a very large majority of shareholders); *Ryan ex rel. Maxim Integrated Prods. v. Gifford*, 2009 Del. Ch. LEXIS 1, at *32 (Del. Ch. Jan. 2, 2009) (same).

Dated: June 4, 2025

Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Aaron P. Arnzen (SBN 218272)

_s/ Albert Y. Chang_
Albert Y. Chang

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002
fbottini@bottinilaw.com
achang@bottinilaw.com
aarnzen@bottinilaw.com

BERNSTEIN LITOWITZ BERGER &
   GROSSMANN LLP
Jeroen van Kwawegen
Thomas G. James (*pro hac vice*)
Eric J. Riedel (*pro hac vice*)
James Janison (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
jeroen@blbglaw.com
thomas.james@blbglaw.com
eric.riedel@blbglaw.com
james.janison@blbglaw.com

Gregory V. Varallo (*pro hac vice*)
500 Delaware Avenue, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com

*Attorneys for Plaintiffs*
*Norman Wilhoite and Judith Wilhoite*